IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARILYN J. M.,[1] | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Civil No. 17-cv-509-CJP[2] |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Respondent. | ) |
| | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Marilyn J. M., represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits on June 3, 2010, alleging disability beginning on March 14, 2004. (Tr. 230). Plaintiff was denied benefits, and requested an evidentiary hearing, which was held on November 8, 2012. A supplemental hearing was held in July 2013. Administrative Law Judge (ALJ) Joseph W. Warzycki denied plaintiff's application on August 5, 2013. (Tr. 14-26). The Appeals Council denied review, and ALJ Warzycki's decision became the first final

---

[1] In keeping with the Court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 19.

agency decision. (Tr. 1-6). Plaintiff filed her first complaint with this Court in December 2014. Upon a Joint Motion for Remand, this Court reversed and remanded the agency's first final decision in August 2015. (Tr. 1227-1233).

Plaintiff's third evidentiary hearing was held on July 13, 2016, by ALJ George M. Bock. Again, plaintiff's application for benefits was denied. (Tr. 1149-1169). Plaintiff requested review by the Appeals Council; however, it again declined jurisdiction. (Tr. 1136-1142). Thus, administrative remedies were exhausted making ALJ Bock's denial the final agency decision. Plaintiff filed a timely complaint with this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ committed reversible error when he failed to account for plaintiff's moderate impairment in concentration, persistence, or pace (CPP) in the residual functional capacity (RFC) finding.

2. The ALJ adopted vocational expert (VE) opinions that lacked a reliable basis resulting in the ALJ's finding at step five to be unsupported by substantial evidence.

## Applicable Legal Standards

To qualify for DIB or SSI benefits, a claimant must be disabled within the meaning of the applicable statutes and regulations.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is

presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th

Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Bock followed the five-step analytical framework described above. ALJ Bock found plaintiff was insured through December 31, 2009,[4] and he determined that plaintiff had not engaged in substantial gainful activity (SGA) since March 14, 2004. The ALJ found plaintiff had severe impairments of mild degenerative disc disease of the lumbar spine, obesity, degenerative disc disease of the cervical spine status post fusion and revision surgeries in 2005 and 2006, depression, and anxiety. ALJ Bock found plaintiff had moderate limitations in social functioning and in maintaining CPP. (Tr. 1153). However, ALJ Bock determined none of plaintiff's impairments met or equaled the severity of a listed

---

[4] The date last insured is relevant only to the claim for DIB.

impairment. (Tr. 1152).

ALJ Bock found plaintiff had the RFC to perform work at the light exertional level with some physical and mental limitations. The mental limitations were to perform simple, repetitive, and unskilled work that does not involve production pace; never interact with the general public; and have only occasional interaction with co-workers. (Tr. 1154-55).

Based on testimony from a vocational expert (VE), ALJ Bock found plaintiff was incapable of performing any past relevant work, but found other jobs existed in significant numbers within the national economy when considering plaintiff's age, education, work experience, and RFC. (Tr. 1168).

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period. As plaintiff addresses only her mental limitations, a discussion of the medical evidence related to her physical condition is unnecessary.

1. **Agency Forms**

Plaintiff was born in June 1970 and was thirty-three years old in March 2004, at the time of the alleged disability onset date. (Tr. 230). She completed twelfth grade and one year of college. Her relevant past work experience includes a position with a party outlet business as a backroom coordinator for a little over nine years. (Tr. 234). She stopped working on March 14, 2004, because of her

conditions.

Plaintiff, who was five feet eight inches tall and two hundred twenty-five pounds, alleged the following disabling conditions: two neck fusions; back problems; left arm and head problems; depression; anxiety; headaches; lower back pain and pain down her legs; inability to extend head upwards; and hand problems. (Tr. 233). In June 2010, plaintiff was taking several types of medication. Of what she could remember, she informed that she took Crestor for cholesterol, Cymbalta for depression; Dilaudid for pain, Maxalt for headaches, Toporal XL for high blood pressure, and Xanax for anxiety. (Tr. 236).

### 2. Evidentiary Hearing

Plaintiff was represented by counsel at the hearing in July 2016. Plaintiff and a VE, Denise Waddell,[5] were both sworn and testified under oath. (Tr. 1181-1203).

ALJ Bock began the hearing by asking background information and then briefly questioned plaintiff only about her physical capabilities. When ALJ Bock concluded his questions, plaintiff's counsel then examined her regarding her capabilities. (Tr. 1183-93).

Relevant to plaintiff's raised issues, her counsel asked about her mental and emotional health. Plaintiff testified she was receiving treatment for depression and anxiety. She was seeing a psychiatrist, who prescribes and monitors her medications, and she was also seeing a counselor. Plaintiff said her

---

[5] Defendant's brief indicates the VE was mistakenly identified as "Sidney Schwaddell" in the hearing transcript. (Doc. 15 at 3, f.1). (Tr.1197). However, the VE was Denise Waddell as her resume reflects. (Tr. 1405-06).

depression and anxiety affected her ability to work because she cannot be around other people. She explained she might start crying without knowing why. (Tr. 1194). When asked whether she could perform work in a sit-down work setting, plaintiff indicated that she did not think that was possible and explained she would likely become frustrated "…because [if I were to] try and sit there…I can't do computers because I have a hard time, especially with one hand, and I don't know. I just get fed up." (Tr. 1195).

Plaintiff's counsel concluded her examination of plaintiff, and ALJ Bock called the VE, Denise Waddell. The VE testified she reviewed plaintiff's work history, and described plaintiff's backroom coordinator job as a "stock clerk," which is semi-skilled and requires the ability to perform at a heavy exertional level. (Tr. 1198). Then, the ALJ asked the VE a hypothetical question that corresponded to the ultimate RFC findings, specifically including "the individual is limited to repetitive work, which is unskilled and simple and has no production pace…the individual should have no interaction with the general public and should have only occasional interaction with coworkers." The VE testified that the person in the hypothetical could not perform plaintiff's past work. ALJ Bock immediately asked, "[w]hat other types of unskilled work, if any might be available?" The VE responded, "I can provide [three] examples at the light exertional level" that "will be unskilled…" The VE identified (1) mail clerk, (2) collator operator, and (3) router. (Tr. 1199).

### 3. Medical Evidence

The records indicate plaintiff's mental and emotional problems were treated by several physicians and mental health professionals as early as March 2008. Sophia Rostovtseva, M.D., her primary care physician then, noted at an early March 2008 visit that plaintiff was very emotional, tearful, angry, and irritable. Dr. Rostovtseva noted plaintiff was very depressed but had never been treated for it. (Tr. 688-89). Plaintiff started a Lexapro trial at that time. (Tr. 691).

After only a very brief period of improvement with Lexapro, plaintiff reported in April 2008 that Lexapro was no longer helping control her symptoms. (Tr. 692; 695). Despite brief and intermittent improvements, the next several years consisted of trying to find an effective medication at a therapeutic dose to treat her depression and anxiety. Her symptoms frequently and almost invariably included uncontrollable crying spells, and feeling irritable, depressed, and anxious. (Tr. 698; 700; 702; 704; 707-10; 713-15; 717-22; 724-25; 727-28; 733-35; 737-39; 743; 745-47; 765). Compounding her overall condition, plaintiff regularly reported sleep disturbances caused by her pain, which resulted in plaintiff feeling tired. (Tr. 713; 717).

Plaintiff tried several different medications after first trying Lexapro without success. For depression, she tried Prozac; Effexor XR; Cymbalta; Abilify; Celexa; Trazodone; Wellbutrin; and Sertraline. (Tr.700; 709; 897; 951-52; 959-60; 966-67). Plaintiff also took Alprazolam for her anxiety and Ambien for her poor sleep. (Tr. 728; 897).

9

Moreover, plaintiff's records indicate that she struggled with interacting with others at times. For example, two years after starting treatment for her depression, Dr. Rostovtseva noted plaintiff must have become offended because she "screamed" during the examination; it was noted plaintiff later apologized. (Tr. 745-47). Additionally, other records include notes that plaintiff regularly presented as very emotional and tearful. (Tr. 698; 700; 702; 704; 707-10; 713-15; 717-22; 724-25; 727-28; 733-35; 737-39; 743; 745-47; 765). Several records note plaintiff reported yelling and "holler[ing]" at her daughter and her boyfriend; plaintiff expressed she did not know why she yelled and "hollered." (Tr. 970; 972).

In June 2010, plaintiff's major depression was described as significantly worsening. It was noted plaintiff had insurance issues and was out of her depression medication prescription for approximately two months. In addition to these circumstances, plaintiff had financial worries, relationship problems, was socially isolated, and unemployed. Doctor Rostovsteva opined all of these circumstances impacted plaintiff's mental status. She further noted that plaintiff's symptoms were aggravated by traumatic memories and chronic pain. At that time, plaintiff was experiencing anxiety, fearful thoughts, depressed mood, diminished interest or pleasure, fatigue or loss of energy, feelings of guilt and worthlessness, poor concentration, indecisiveness, significant change in appetite, and sleep disturbance. Plaintiff was forgetful, exhibited poor insight and judgment, and had poor attention and concentration. (Tr. 765-67).

Plaintiff began seeing Heather L. Lucas-Foster, M.D. in August 2010. Those records indicate plaintiff continued struggling with her depression and anxiety. (Tr. 895-902;). In September 2011, Dr. Lucas-Foster recorded plaintiff's anxiety and depression might be compounded with a "more complicated mood disorder." She further noted that plaintiff perceived her mood as worsening, but Dr. Lucas-Foster thought plaintiff's perception could possibly be attributed to coincident changes in her prescribed pain medication, which was managed by a different physician specialist. (Tr. 951-52).

In December 2011, plaintiff had an initial psychiatric evaluation at Southern Illinois Healthcare Foundation with a psychiatric nurse practitioner, Debbie L. Kelly, PMHNP-BC. Plaintiff informed she had felt depressed, down, and irritable for approximately ten years. At visits, plaintiff regularly reported low energy and poor concentration. She regularly exhibited a blunted, flat, and sad affect; tended to be cooperative, though guarded; had fair to poor judgment and insight; and although plaintiff typically had a linear and coherent thought process and normal psychomotor activity, she commonly presented with impoverished speech. (Tr. 960-77; 1118-33). She received treatment from Debbie Kelly through June 2013. Throughout that period, plaintiff reported anxiety, anger, and depression. (Tr. 975-77).

Plaintiff began seeing Narsimha Muddasani, M.D. at Southern Illinois Healthcare Foundation in January 2014 and continued seeing her through at least February 2016. Dr. Muddasani's records note plaintiff was treated for major

depressive disorder, severe; and anxiety. Plaintiff complained of the same. She also suffered from chronic pain, depressed mood, and exhibited tearfulness. In September 2014, although plaintiff experienced considerable stress after learning she had to find a new place to live and had medical insurance issues again, she was noted as being fairly stable. She did not have any agitation or aggression. In December 2014, Dr. Muddasani noted plaintiff reported no difficulty concentrating; no fatigue; no restlessness; no change in appetite; no feelings of hopelessness; no feelings of helplessness; no inappropriate guilt; participates in usual activities; no suicidal ideations; no sleep disturbances; no excessive sleeping; etc. In March 2015, the note said plaintiff was of average intelligence; her mood was euthymic; and her affect was pleasant, happy, euphoric, and congruent to thought content. Conversely, within the same March 2015 record, Dr. Muddasani noted plaintiff still had crying spells and was depressed. Plaintiff was quoted as stating, "I feel like I don't need to be around." (Tr. 1482-84; 1602-04).

### 4. State Agency Consultative Psychological Examination

Plaintiff met with Stephen G. Vincent, Ph.D. on September 15, 2010, for a psychological examination. Upon the examination, Dr. Vincent noted plaintiff appeared tired and fatigued. He also noted plaintiff reported several issues including issues with pain, migraine headaches, poor sleep, never awakening feeling rested, and feeling fatigued and lethargic. Further, plaintiff reported episodes of anxiety and feeling overwhelmed to the point where she experienced

numbness and tingling in her outer extremities, an inability to relax; sensing impending doom; lightheadedness; an accelerated heart rate, trembling and shaking, fears of losing control, trouble breathing, fears of dying, and feeling faint or flush.

Dr. Vincent's test results revealed plaintiff was oriented to person, place, and time and was not psychotic. He found plaintiff's speech was somewhat underproductive. He concluded plaintiff's speech was underproductive because of psychomotor impairment and preoccupation with pain. Dr. Vincent determined her preoccupation with her pain caused her to misinterpret test instructions and resulted in her providing irrelevant responses. However, Dr. Vincent concluded she had no difficulties responding to all test demands when redirected.

Furthermore, plaintiff's thought processes were slow, deliberate, and concrete secondary to pain and side-effects from medication. Plaintiff was able to remember five numbers forward and four numbers backward; however plaintiff could not recall three past presidents stating, "I don't know." Despite this memory issue, plaintiff could provide her date of birth and Social Security Number without difficulty. Dr. Vincent concluded plaintiff had difficulties with anxiety, depression, and headache pain. His final diagnostic impression included major depression and generalized anxiety disorder with panic-like episodes. (Tr. 866).

### 5. State Agency Consultants' Mental RFC Assessment

Howard Tin, Psy.D. completed a Psychiatric Review Technique Form

(PRTF) based on Dr. Vincent's evaluation and records received as of September 21, 2010. (Tr. 874-87). Dr. Tin noted plaintiff had an affective disorder as well as an anxiety-related disorder. (Tr. 874). Dr. Tin determined plaintiff had moderate difficulties in maintaining CPP. Specifically, Dr. Tin found plaintiff had a limitation regarding her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 888).

Dr. Tin specifically marked plaintiff was "not significantly limited" with regard to the ability to carry out detailed instructions or with regard to the ability to maintain attention and concentration for extended periods. (Tr. 888). Contra to his earlier stated findings, Dr. Tin's "Sustained Concentration and Persistence" conclusion states that "[s]he has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person is capable of performing simple tasks." (Tr. 890).

On September 30, 2010, Dr. Tin completed a second PRTF for the time period prior to plaintiff's last insured date of December 31, 2009. (Tr. 903-16). Dr. Tin was unable to make any medical dispositions or findings regarding plaintiff's functional limitations prior to December 31, 2009, because of insufficient evidence. (Tr. 913).

In April 2015, Dr. Tin completed yet another PRTF, and in July 2015 a second agency psychological consultant, David Biscardi, Ph.D., completed a fourth PRTF. (Tr. 1205-14; 1216-26). ALJ Bock gave Dr. Tin's and Dr. Biscardi's 2015 opinions little weight because "…they did not have the benefit of

interacting with the claimant and their opinions are not entirely consistent with the record as a whole." (Tr. 1165-66). Consequently, the Court will not address them here.

## Analysis

The plaintiff here specifically argues the ALJ failed to account for deficits of CPP in the RFC, and that his failure to account for deficits resulted in a failure to build an accurate and logical bridge between the evidence of mental impairments and both the hypotheticals posed to the VE and the RFC. The Court agrees.

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)(collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining CPP, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining CPP. (Tr. 1154; 1155). ALJ Bock made this determination at step three of the sequential analysis when he found plaintiff's impairments did not meet or equal a listed impairment. ALJ Bock recognized that step three is not a mental RFC assessment, but stated, "…the following residual functional capacity assessment

15

reflects the degree of limitation the undersigned found in the 'paragraph B' mental function analysis." (Tr. 1154). Further, two state agency consultants opined plaintiff had moderate limitations in CPP; ALJ Bock gave Dr. Tin's 2010 opinions "significant weight," and he afforded Dr. Winfrey's 2012 opinion "substantial weight." (Tr. 1163;1164). However, neither the RFC assessment nor the hypothetical question posed to the VE mentioned a limitation in CPP. Rather, the ALJ limited plaintiff to "simple, repetitive, and unskilled work that does not involve production pace; she should have no interaction with the general public; and she should be limited to only occasional interaction with co-workers." [6] (Tr.1155).

The Commissioner mainly defends the ALJ's decision by attempting to distort plaintiff's first issue into one surrounding the weight that the ALJ gave to Dr. Winfrey's 2012 opinions; the Commissioner's tactic is amiss. (Doc. 15 at 10). Although the plaintiff points to Dr. Winfrey's 2012 testimony and Dr. Tin's 2010 PRTF, as well as the weight ALJ Bock gave each opinion, doing so only illustrates that the record supports a finding plaintiff had moderate CPP limitations, and that ALJ Bock failed to account for plaintiff's limitations in that area. ALJ Bock's failure resulted because he did not incorporate sufficiently related measures or limits within the RFC and the VE hypothetical as required by cases such as *Yurt*, *O'Connor-Spinner*, and the other cases cited above.

---

[6] Later, at the end of his RFC analysis, ALJ Bock fails to even mention "work that does not involve production pace". Rather, he declared plaintiff's "…mental impairments have been taken into consideration by limiting her to simple, repetitive, and unskilled work with no interaction with the public and only occasional interaction with co-workers." (Tr. 1167).

Moreover, the Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. For example, in *Stewart, supra*, a case decided in 2009, the Court observed that "[t]he Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016); *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017).

Furthermore, plaintiff references *Craft v. Astrue*, when arguing "simple, routine tasks" or "unskilled work" does not inherently address limitations with maintaining CPP. *Craft v. Astrue*, 539 F.3d 668, 677-8 (7th Cir. 2008). Rather, those limitations tend to address deficits related to intelligence, memory, and understanding. Here, the Commissioner acknowledges that plaintiff does not have an intelligence issue; nor, did the ALJ find plaintiff had limitations in memory or understanding. Therefore, absent a logical explanation from the ALJ, any argument that "simple, routine tasks" or "unskilled work" is related to and accounts for plaintiff's moderate CPP limitation fails.

Additionally, plaintiff cites *Varga*, *supra*, arguing that ALJ Bock's limit of

17

"work environment free of fast paced production requirements" is too vague and undefined for a vocational expert to assess. The Court also agrees with plaintiff here. Neither the ALJ nor the VE explained what "free of fast paced production" meant. The ALJ failed to explain what such a limitation accounted for or how any evidence supported a limitation that "free of fast paced production" was necessarily related to plaintiff's limitations. Therefore, ALJ Bock's limitation of "free of fast paced production" is not supported by the evidence, and without further explanation, it cannot be considered as a limit that accounts for a moderate CPP limitation.

The Commissioner also defends ALJ Bock's decision by arguing that none of plaintiff's doctors assessed any limitations related to CPP. Regardless, this is irrelevant here; the ALJ himself found that she had moderate limitations in that area, and said that his RFC assessment would reflect those limitations. Yet, the ALJ failed to discuss the limitations rendering the Commissioner's argument unavailing.

In sum, ALJ Bock found that plaintiff had moderate limitations in maintaining CPP; he also said that the RFC assessment would reflect those limitations. It did not. The Commissioner acknowledges the CPP finding, but then goes astray and argues an entirely different issue than what plaintiff raised. (Doc. 15 at 10-13). In fairness, the Commissioner does eventually offer conclusory statements that "[t]he ALJ adequately addressed the evidence of plaintiff's conditions, and his decision reasonably reflects the path of his

reasoning," and that "[b]ecause the path of his reasoning may readily be discerned, his decision should be upheld." (Doc. 15 at 12-13). However, the Court disagrees with the Commissioner, and reiterates that binding Seventh Circuit precedent establishes that a limitation to simple, routine tasks or to unskilled work does not adequately account for a moderate limitation in maintaining CPP. The Commissioner has not even attempted to distinguish those precedents.

Because the Commissioner failed to adequately account for limitations as to CPP, the ALJ's RFC finding and thus, his finding at step five are not supported by substantial evidence. Therefore, this case must be remanded to the Commissioner for rehearing.

Because disposition of plaintiff's first issue warrants remand, plaintiff's second issue will not be addressed.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Marilyn J. M.'s application for DIB and SSI benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42

U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: July 11, 2018.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISRATE JUDGE**
